**VILLAGE BOOKS, INC., Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF APPEALS AND REVIEW, Respondent.**

No. 6563.

District of Columbia Court of Appeals.

Argued Oct. 2, 1972.

Decided Nov. 10, 1972.

Stanley M. Dietz, Washington, D. C., for petitioner.

David P. Sutton, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for respondent.

Before REILLY, Chief Judge, and FICKLING and YEAGLEY, Associate Judges.

REILLY, Chief Judge:

This case is a sequel to the conviction last year of one Frederick C. Wilhoit for selling an obscene book—a violation of D.C.Code 1967, § 22–2001 (Supp. V, 1972)—at an "adult book shop" operated by Village Books, Inc. The conviction and prison sentence imposed upon the defendant was affirmed by this court in an opinion describing the book as "pornographic filth of the grossest kind." Wilhoit v. United States, D.C.App., 279 A.2d 505, 507 (1971), cert. denied, 404 U.S. 994, 92 S.Ct. 538, 30 L.Ed.2d 546 (1971).

At the time of the offending transaction, Wilhoit was listed in the annual report of Village Books, Inc.—petitioner here—as the president of that corporation. Two earlier applications for certificates of occupancy which were issued to the corporation shortly before this incident, were signed by him as "owner of business." Shortly after his conviction the District government began proceedings to revoke licenses which had been granted the corporation for coin-operated motion picture machines located in four different book stores it owned in the downtown area. On April 19, 1971, by a letter signed by the Deputy Chief, Business Licenses and Permits, the corporation was notified of a proposal to revoke its licenses. The letter stated that "[t]his adverse action is taken under the provisions of 47 D.C.Code 2345, in the interest of public decency, as a result of the arrest and conviction of Frederick Cecil Wilhoit, President of Village Books, Inc., for violation of 22 D.C.Code 2001 (Indecent Publications)" and that revocation would become effective seven days later, unless the corporation appealed.

An appeal was filed within the period of the notice and a hearing was held before a committee of the Board of Appeals and Review (the Board) on November 19, 1971. For some reason not disclosed by the record, the Board did not dispose of the issues before it until June 6, 1972, when it handed down a decision sustaining the "action", i. e., proposal, revoking the corporation's licenses to operate the amusement machines at all four premises. It is this decision which is now before us for consideration on the corporation's petition for review.

Petitioner's principal objection to the decision is based upon the First and Fifth Amendments to the Constitution. He argues that (1) the license revocation is an unconstitutional prior restraint upon the right to exhibit films tantamount to censorship without affording any type of judicial adversary determination, and (2) the revocation statute under the authority of which the Board purported to act (D.C.Code 1967, § 47–2345(a)) was so vague and overly broad as to offend the Fifth Amendment, because the pertinent wording provided:

> The Commissioners are further authorized and empowered . . . to suspend or revoke any license issued hereunder when, in their judgment, such is deemed desirable in the interest of public decency . . . .

Petitioner also contends that a single incident—the sale of an obscene book by a former employee and former president of the corporation—did not justify the Board in concluding that "public decency" would be endangered unless the corporation's license for the motion picture machines was revoked. It points out that there was no evidence before the Board showing that obscene films had been or were about to be exhibited at any of the corporation's book stores.[1] Accordingly, we are urged to hold that Wilhoit's conviction was not reasonably related to the licensed activity and that the failure of the Board to make any factual finding on this point invalidates its order.

The reply of the government to these contentions is that despite the seeming breadth of the statute, the challenged decision by merely denying a license to a person not "of good moral character" represented a reasonable construction which preserved the statute from constitutional infirmity, and in view of Wilhoit's "plainly substantial relationship" with the corporation there was a rational basis for the Board's order.

■ After examining the record and the text of the Board's opinion, we deem it unnecessary to reach the constitutional question, for it appears to us that the decision

---

1. A film described as obscene by a police officer who had taken it from one of petitioner's stores was offered as an exhibit. The Board, however, sustained an objection to its receipt into evidence.

of the Board falls short of meeting the standards of the Administrative Procedure Act as set forth in D.C.Code 1967, § 1–1509 (e) (Supp. V, 1972). In numerous prior decisions, we have held that an agency order cannot be permitted to stand unless it is accompanied by findings of fact and conclusions of law "on each contested issue"— which in turn must be ". . . supported by and in accordance with the reliable, probative, and substantial evidence." Woodridge Nursery School v. Jessup, D.C. App., 269 A.2d 199 (1970); Allentuck v. District of Columbia Minimum Wage and Industrial Safety Board, D.C.App., 261 A. 2d 826 (1969).

This requirement is particularly compelling where agency action is predicated upon a licensing act or some other statute which on its face confers great latitude for discretion upon administrative bodies. Thus, in another case, Proctor v. Hackers' Board, D.C.App., 268 A.2d 267 (1970), where we were also confronted with a challenge to the validity of the licensing statute applied here, we observed (*id.* at 270):

> We hold that the Hackers' Board may not suspend or revoke a hacker's license unless it concludes after hearing and upon appropriate findings as required by the D.C. Administrative Procedure Act that a valid regulation promulgated by the District of Columbia Council under Section 47–2345(a) prescribing suspension or revocation has been violated, or unless it can show in the record "reliable, probative, and substantial evidence," supporting *its* own conclusion that suspension or revocation of the particular license will be "in the interest of public decency" or necessary for "the protection of lives, limbs, health, comfort, and quiet of the citizens of the District of Columbia" . . . . (Footnotes omitted.)

The Board decision now under review is also defective in those particulars, for although it contains a set of findings and conclusions, there is nothing in the text to explain its conclusion that the Wilhoit conviction required that the *corporation's* license for the amusement machines should be revoked in the interest of public decency. It is true that the government in briefs and argument suggested a rational basis for its action. But this was premised on the assumption that Wilhoit, an individual of demonstrated poor moral character, holds a dominant, or at least a substantial interest, in the enterprise.

There is no finding of fact, however, as to what interest, if any, Wilhoit held in the corporation at the time of the revocation proceedings. Moreover, whatever inference could have been drawn from the pre-arrest documents describing him as "president" or "owner" was dissipated by other documentary exhibits in the record showing that another individual had succeeded him as corporate president. Nor was there any finding with respect to the character of the pictures exhibited on the licensed machines. Accordingly, the order of revocation must be vacated.

Reversed.