**AVON 42ND STREET CORP.,**
**Plaintiff,**

v.

**Bess MYERSON, Commissioner of the New York City Department of Consumer Affairs, Defendant.**

No. 72 Civ. 4100.

United States District Court,
S. D. New York.

Dec. 18, 1972.

Jay Goldberg, New York City, for plaintiff.

Norman Redlich, Corp. Counsel of the City of New York by Israel Rubin, Joseph Halpern, Renee Modry, Joseph S. Lauer, and Michael M. Klein, New York City, for defendant.

## OPINION

TYLER, District Judge.

This is an action brought by plaintiff, Avon 42nd Street Corp., pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983, to enjoin enforcement of and to have declared unconstitutional certain ordinances of the City of New York, relating to the licensing of motion picture theatres. Plaintiff owns and operates a motion picture theatre at 133 West 42nd Street, New York City; defendant ("Commissioner") is charged with the enforcement of the challenged ordinances. Each party has moved for summary judgment.

The ordinances under attack[1] essentially vest control over the regulation of motion picture theatres in the Commissioner (§ B32–23.0); licenses are required for the lawful operation of such theatres (§ B32–24.0); the Commissioner controls the granting of the licenses and their renewal (§ B32–25.0); similarly, the Commissioner may revoke or suspend a license, or impose a fine on the licensee, on the basis of complaints of violation of the ordinance (§ 7773a–7.0).

The facts underlying the suit are uncontested. Plaintiff holds a motion picture license issued by the New York City Department of Consumer Affairs; the complaint recites that plaintiff was incorporated in July, 1971, and since that date has exhibited more than 800 motion pictures. On May 12, 1972, plaintiff, by its attorney, appeared in the New York

---

1. New York City Administrative Code, Chapter 32, Title A, §§ 773a–1.0 to 7.0, and Article 2, §§ B32–22.0 to 27.0.

City Criminal Court to answer a charge of violating New York Penal Law § 235.05 (McKinney's Consol.Laws, c. 40, Supp.1972) by having shown an allegedly obscene film. Instead of answering the charges, plaintiff pleaded guilty to disorderly conduct as defined by New York Penal Law § 240.20(7) and paid a fine of $200; there was no finding made as to the obscenity of the film.

Thereafter, on July 5, plaintiff was notified by defendant to attend a hearing on July 27 and to "show cause" why its application for a renewal of its license would not be denied, based on the events of May 12. The concluding sentence of this notice read:

"PLEASE TAKE NOTICE that the within proceeding may result in the denial of your application for renewal of motion picture theatre license on the gound [sic] that you may not be a fit and proper person of good character and responsibility qualified to be licensed."

The hearing was held as scheduled on the 27th of July. The transcript reveals an astonishingly vague discussion centering on the plea of guilty for disorderly conduct and the motion picture involved. No evidence or witnesses were presented, other than plaintiff's counsel and one of its officers. There was no mention of a denial of the application for renewal of the license, or even of its suspension; instead, at the end of the hearing, the Examiner merely asked: "Well, would you say it's fair to fine $25 on each theatre, which are the two subjects of this hearing?" Despite the inconclusiveness of the foregoing, plaintiff received on September 19th a notice that its license was suspended for 30 days, "[b]ased upon the facts and circumstances contained in the transcript of

hearing." [2] Plaintiff sought review of the suspension in the Supreme Court of New York, New York County, but did not at that time challenge the constitutionality of the administrative system; that court remanded the case on October 5, 1972 to the defendant on the basis that the penalty was excessive. Finally, on November 16, 1972, defendant reduced the suspension period to seven days.

Plaintiff challenges here the constitutionality of the licensing system of motion picture theatres in general and as applied. The thrust of the complaint is concisely stated at page 4:

"The claim is made that the challenged ordinances contained in the Administrative Code of the City of New York facially and as applied to motion picture theatres are unconstitutional in that they fail to set adequate standards for issuing, renewing, suspending and revoking licenses and constitute an invalid prior restraint on exercise of freedoms guaranteed by the First Amendment."

Defendant counters that the licensing system itself is a valid exercise of the police power, and that no censorship or prior restraint is involved in the suspension here because it was based upon an adjudication that there was a violation of the law relating to the operation of a theatre. Defendant further argues that the requirements of due process were met by the notice of charges and hearing prior to the suspension, and that the regulations are not unconstitutionally "vague" because plaintiff should have known that "disorderly conduct" would result in suspension. Finally, the Commissioner urges this court to abstain from deciding the constitutionality of

2. Counsel to defendant has been more fulsome in its explanation: "In view of the persistent conduct of the corporate plaintiff in exhibiting hard-core pornographic motion picture films and its admitted violation of the Penal Law of the State of New York, the Commissioner of the Department of Consumer Affairs of the City of New York, on September 19, 1972, suspended the corporate plaintiff's motion picture theatre license . . ." Affidavit of Attorney Klein in opposition to motion for preliminary injunction, sworn to September 29, 1972, at page 3. There is nothing in the record which indicates prior convictions for obscenity.

the ordinances attacked before any state court adjudication of their merits.

For the reasons set out below, I find that the ordinances in controversy are unconstitutional on their face and as applied, insofar as they empower the defendant to suspend or revoke or refuse to reissue movie theatre licenses on the basis of the "character" of the licensee, or the "morality" or "decency" of the exhibition, or on no basis at all.

■ Addressing the Commissioner's abstention argument, I note, first, that the case of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) does not compel such a result: there is no pending state prosecution which plaintiff seeks to have enjoined; nor do there seem to be any other underlying policies, as enunciated in *Younger,* in favor of such abstention. Secondly, there is no possible construction of the provisions in the challenged ordinance which would obviate the necessity of passing on its constitutionality; nor has defendant in fact cited any New York cases which so limit it. In the absence of exceptional circumstances, this court should not abstain from exercising its jurisdiction. Zwickler v. Koota, 389 U. S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). "The Supreme Court has repeatedly instructed federal courts confronting constitutional claims arising in this posture to decide the case before them rather than to force plaintiffs to first attempt to vindicate those federal rights in state courts." Wulp v. Corcoran, 454 F.2d 826, 833–834 (1st Cir. 1972). See also, Marks v. City of Newport, Kentucky, 344 F.Supp. 675, 678 (E.D.Ky.1972), (invalidating a municipal ordinance which required the licensing of bookstores and movie theatres, on the grounds that it constituted a "prior restraint on the distribution of printed matter", and was also void for vagueness.) Hence, this court must turn to the merits of this controversy.

■ For at least two decades, it has been clear that ". . . expression by means of motion pictures is included within the free speech and free press guaranty of the First and Fourteenth Amendments." Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 502, 72 S.Ct. 777, 781, 96 L.Ed. 1098 (1952). In *Burstyn,* a New York State statute was attacked which prohibited the showing of any film without a valid license, and which provided that a license could be denied or withdrawn if the film were "sacrilegious". The Supreme Court ruled that the New York statute represented an invalid prior restraint on public expression, since the term "sacrilegious" provided no standard at all for the exercise of authority and the risk remained that legitimate films might be suppressed: "New York cannot vest such unlimited restraining control over motion pictures in a censor." 343 U.S. at 505, 72 S.Ct. at 782.

■ Once it is established that the First Amendment protects the distribution of films as well as literature, it follows that no state or municipality may significantly interfere with such expression. Although obscene language is not within the First Amendment protection, Alberts v. California, 354 U.S. 476, 485, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and can therefore be restrained by state action, the danger is always present that such restraint will carry over to the non-obscene. Thus ". . . the Fourteenth Amendment requires that regulation by the States of obscenity conform to procedures that will ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line." Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 66, 83 S.Ct. 631, 637, 9 L.Ed.2d 584 (1962).

"Sensitive tools" must be utilized to delineate this line between the obscene and the non-obscene, Speiser v. Randall, 357 U.S. 513, 525, 78 S.Ct. 1332, 2 L.Ed. 2d 1460 (1958), to insure that the latter will remain unfettered. Thus, the Second Circuit has held that an adversary hearing is required before the seizure of films, which is "capable of affording a 'reasonable likelihood' that nonobscene

films or books will reach the public." Astro Cinema Corp. Inc. v. Mackell, 422 F.2d 293, 296 (2d Cir. 1970); Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2d Cir. 1969), cert. denied 397 U.S. 920, 90 S.Ct. 929, 25 L.Ed.2d 101 (1970). And in Bantam Books, Inc. v. Sullivan, *supra,* injunctive relief was awarded against a commission set up to educate the public "as to literature tending to corrupt youth." Although the commission had only investigatory powers, it could recommend prosecution, and this was held to constitute sufficient inhibition of First Amendment expression to warrant the relief requested. Finally, in Interstate Circuit, Inc. v. City of Dallas, 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968), the Supreme Court voided an injunction issued by a county court prohibiting the showing of a film found unsuitable to show to young persons, on the grounds that the underlying municipal classification and licensing system was impermissibly vague. The court held that since motion pictures are protected by the First Amendment, their regulation must be precise: "The vice of vagueness is particularly pronounced where expression is sought to be subjected to licensing." 390 U.S. at 683, 88 S.Ct. at 1303.

■ Turning now to the licensing system challenged in the instant suit, the standards which govern the Commissioner in considering the issuance, suspension, revocation or reissuance of a license are found in several sections of the New York City Administrative Code and are set out in the Appendix to this opinion.

■ It can be readily seen that sections 773a–3.0 and 7.0 of Title A provide no ascertainable standards by which the commissioner is to exercise his power to suspend or revoke licenses. Similarly, section B32–25.0 of Article 2 provides merely that the commissioner ". . . shall pass . . . upon the character of the applicant" in deciding whether to issue or reissue licenses. Finally, section B32–26.0 calls for the investigation and reporting of "any offense against

morality, decency or public welfare committed at such exhibitions". Such standards, purporting to limit the discretion of the decision-maker in the regulation of First Amendment activities, have been found to be constitutionally inadequate in the past. See e.g., Shuttlesworth v. City of Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); Bantam Books, Inc. v. Sullivan, *supra*; Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958).

The Commissioner argues strenuously that:

"[t]he purpose of our motion picture theatre licensing ordinance (ch. 32, Title B, article 2) is to protect the physical safety, health and welfare of the public . . . The licensing power is concerned only with violations of law in connection with the operation of the theatre. This licensing power has not been used and cannot be used to censor motion pictures but is a traditional exercise of the police power." Brief of Defendant at 7.

But this contention is contradicted flatly by the terms of the ordinance cited in the Appendix, and by its application in the instant case. Indeed, the suspension of plaintiff's license provides a good example of the exercise of administrative authority, unrestricted by meaningful standards, in this sensitive area. There is no indication in the record that plaintiff's theatre was physically unsafe, or maintained in such a condition. Rather, the undisputed fact is that plaintiff was charged with having shown an obscene film, and later pleaded guilty to disorderly conduct. To permit the suspension of operation of a theatre on the basis of a prior conviction even for obscenity, amounts to an unconstitutional suppression of protected freedom of expression. Long ago, in Near v. Minnesota ex rel. Olson, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), it was held that the suppression of a newspaper as a public nuisance because of past offenses is the essence of censorship. Fines, and not suppression, are the appropriate

remedy for abuses of expression. Near v. Minnesota, *supra*, 283 U.S. at 711–712, 720, 51 S.Ct. 625.

■ This is not to say that the City cannot validly regulate and license motion picture theatres on the basis of public health and safety by a narrowly drawn ordinance. That is not at issue in this case. The sole concern here is with those provisions of the New York City Administrative Code which vest unfettered discretion in the Commissioner to suspend, revoke, or fail to issue or reissue licenses on the basis of "character of the applicant", or for violations of public "morality" or "decency". These "standards" directly threaten the exercise of expression guaranteed by the First Amendment.

The suspension of a license has as its direct result the prevention of a motion picture exhibitor from showing films for the period of the suppression. Thus, these films will not "reach the public" for this period, Astro Cinema Corp. Inc. v. Mackell, *supra*, 422 F.2d at 296. If all of these films are obscene, then there is no particular First Amendment problem since there is no prior restraint of protected expression. But the ordinance as drawn contains no assurance that such will be the case; indeed, it would be virtually impossible to so provide.

■ The burden is upon the State to insure that any regulatory system involving prior restraints is narrowly drawn: "Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." Bantam Books, Inc. v. Sullivan, *supra*, 372 U.S. at 70, 83 S.Ct. at 639. If the First Amendment protects the public from the seizure of individual films on the whim of a censor, without a prior adversary hearing to determine their obscenity) Bethview Amusement Corp. v. Cahn, *supra*, and it also protects against the disabling of the vehicle by which the public is enabled to view the films, Bongiovanni v. Hogan, 309 F.Supp. 1364 (S.D.N.Y.1970), it follows *a fortiori* that the right subsequently to show films cannot be abridged because of some prior offense. Near v. Minnesota, *supra*; Interstate Circuit, Inc. v. City of Dallas, 249 F. Supp. 19 (N.D.Tex.1965), aff'd 366 F.2d 590 (5th Cir.1966) (section of municipal ordinance providing for revocation or suspension of exhibitor's license, based upon repeated showings of films deemed unsuitable for young people in violation of ordinance, held unconstitutional since it amounted to a "denial of the exhibitor's right to show such films which are not obscene to an adult audience . . ." 249 F.Supp. at 25).

■ It is therefore my conclusion that the licensing system, as established for motion picture theatres by the New York City Administrative Code, fails to provide sufficiently precise guidelines to restrict the discretion of the administrator in regulating licenses on the basis of the "character" of the licensee, or on the basis of "morality, decency or public welfare committed at such exhibitions", or on no basis at all. In addition, I conclude that the suspension of plaintiff's license in the instant case constitutes an invalid prior restraint of its right of expression. Accordingly, plaintiff's motion for summary judgment is granted, and defendant's motion is denied.

Settle order on notice.

### APPENDIX

Administrative Code of the City of New York:

#### Chapter 32

#### Department of Licenses

#### Title A

§ 773a–3.0 Term.—All licenses shall be granted for a term of one year unless sooner suspended or revoked, or otherwise specifically provided by law.

§ 773a–7.0 Suspension; revocation; fine; hearings—

a. The commissioner is empowered to hear and determine complaints against licensees, and to suspend or revoke any license or permit issued by him.

b. The commissioner . . . shall have power to hear and determine complaints against licensees and may impose a fine of not more than twenty-five dollars or less than one dollar for any violation of the provisions of this chapter. Each such official shall have power to suspend a license sending the payment of such fine.

c. The commissioner when investigating any matters pertaining to the granting, issuing, transferring, renewing, revoking, suspending or cancelling of any license is authorized in his discretion to take such testimony as may be necessary on which to base official action. When taking such testimony he may subpeona witnesses and also direct the production before him of necessary and material records, books and papers.

d . . .

### Article 2

### Motion Picture Exhibitions

§ B32–23.0 Control of motion picture theatres—The commissioner shall regulate and control all motion picture and open-air motion picture theatres.

§ B32–24.0 License required; fee; term.—

a. It shall be unlawful to operate a motion picture or open-air motion picture theatre without a license therefor.

§ B32–25.0 Application for motion picture theatre licenses—Applications for motion picture theatre licenses or for open-air motion picture theatre licenses shall be made to the commissioner, *who shall pass* upon the location of the theatre and *upon the character of the applicant* for the license without delay. Upon the application for the issue or reissue of a license for such theatre, the commissioner shall request the fire department, the department of water supply, gas and electricity, the department of health, and the department of buildings, to inspect the same, and such departments within ten days after receiving such requests, shall file in the department of licenses detailed written reports, which shall include a statement of any violation of law relating to such structure, and any dangerous condition existing therein. . . .

§ B32–26.0 Public morals.—*The inspectors of the department shall investigate the character of exhibitions in motion picture theatres and open-air motion picture theatres, and shall report to the commissioner any offense against morality, decency or public welfare committed at such exhibitions.*

§ B32–27.0 Violations.—Any person who shall violate any provision of this article, upon conviction thereof, shall be punished by a fine of not more than one hundred dollars or by imprisonment not exceeding thirty days, or by both; and any such person for each offense, shall be subject also to the payment of a penalty of fifty dollars, to be recovered in a civil action. [Emphasis added].