## EDWARD J. ALEXANDER v. CITY OF ST. PAUL.

227 N. W. 2d 370.

February 28, 1975—No. 45547.

*Randall D. B. Tigue,* Minnesota Civil Liberties Union, for appellant.

*Pierre N. Regnier,* City Attorney, and *Paul F. McCloskey,* Assistant City Attorney, for respondent.

MacLaughlin, Justice.

The question presented on this appeal is whether the action of the city of St. Paul rescinding plaintiff's license to operate a motion picture theater is an unconstituional prior restraint

of free speech. Because we hold that it is, we reverse the decision of the trial court in favor of defendant, city of St. Paul.[1]

The facts in this case are not in dispute. Plaintiff applied for a license to operate a motion picture theater to be known as the "Flick" located in the city of St. Paul. Defendant, city of St. Paul, has the authority to grant and rescind motion picture theater licenses within its boundaries. Under procedures adopted by the city of St. Paul, plaintiff was allowed to operate the Flick without a license during the pendency of his license application. During the period after the application for the license, but prior to its issuance, one Bernard J. Richards, employed by plaintiff as a ticket taker, was arrested by the St. Paul police and charged with exhibiting an obscene motion picture entitled "The Lecher." On May 14, 1974, Richards entered a plea of guilty to the charge of wrongfully, unlawfully, and intentionally exhibiting an obscene motion picture in violation of St. Paul Legislative Code, § 476.01.[2]

On June 12, 1974, the St. Paul City Council granted plaintiff a license to operate the Flick. On July 8, 1974, plaintiff received a notice of revocation of license, which indicated the intention of a license inspector to recommend that the city council revoke plaintiff's license to operate the Flick. The basis of the revocation was § 372.04(G) of the city's code, which provides:

"It shall be grounds for rescinding or the denial of any motion

---

[1] At the district court level, counsel for both parties agreed that this matter would be submitted to the trial court as a motion by plaintiff for summary judgment or, in the alternative, a permanent injunction enjoining the city from arresting plaintiff, his agents, or employees for operating a motion picture theater without a license, and a cross-motion by the city for summary judgment. The trial court granted summary judgment for the city.

[2] St. Paul Legislative Code, § 476.01, provides: "Any person who shall knowingly exhibit, sell or offer to sell any obscene, lewd, lascivious or filthy book, pamphlet, picture, motion picture, film, paper, letter, writing, print or other matter of indecent character shall be guilty of a misdemeanor."

picture theater license granted under this ordinance if the licensee, owner, manager, lessee, any of the employees, or any person who has a financial interest in the licensed premises, has been convicted of any Federal or State Statute or Municipal Ordinance pertaining to the sale, distribution or exhibition of obscene material relative to the operation of the motion picture theater license."

On July 19, 1974, a hearing was held on the proposed revocation before the St. Paul City Council. At the conclusion of the hearing, the council voted to revoke plaintiff's license. Plaintiff has waived all objections to the conduct of the hearing before the city council.

On July 19, 1974, plaintiff instituted this action in Ramsey County District Court, seeking judicial review of the license rescission pursuant to St. Paul Legislative Code, § 372.07.[3] After listening to a tape recording of the hearing held by the St. Paul City Council and studying memoranda submitted by both parties, the trial court granted the city's motion for summary judgment. Plaintiff appeals the trial court's decision.[4]

---

[3] St. Paul Legislative Code, § 372.07, provides: *"Judicial Review.* A licensee aggrieved by the final decision of the City Council may obtain judicial review by timely filing an action seeking review as provided by law in District Court. The action in District Court shall not be a trial *de novo."*

[4] The parties have been before this court on several occasions during the pendency of this action. Plaintiff moved the district court for a temporary restraining order preventing the city from arresting or threatening to arrest plaintiff, his agents, or employees for operating the Flick without a license until a hearing could be held on plaintiff's motion for a temporary injunction. On July 24, 1974, the district court issued an order denying plaintiff's motion. On motion to this court, we issued an order staying action by the city until the district court could decide plaintiff's motion for a temporary injunction. Thereafter, the district court denied plaintiff's motion for a temporary injunction. Plaintiff moved this court for a temporary injunction pending the final outcome of this litigation in district court. Plaintiff's motion was

Plaintiff's primary contention is that the action of the city of St. Paul revoking his license to operate a motion picture theater because of a past conviction relating to obscenity, whether of plaintiff or one of his employees, is an unlawful prior restraint of expression protected by the First Amendment. We agree. As a result, it will not be necessary to reach other arguments raised by plaintiff.

It has long been recognized that expression by means of motion pictures is included within the free speech and free press guaranty of the First and Fourteenth Amendments.[5] However, it does not follow that the Constitution requires absolute freedom to exhibit every motion picture of every kind at all times and places. Joseph Burstyn, Inc. v. Wilson, 343 U. S. 495, 72 S. Ct. 777, 96 L. ed. 1098 (1952).[6] Thus, it is within the police power of the state to require a license as a condition precedent to the operation of a motion picture theater, Franklin Theater Corp. v. City of Minneapolis, 293 Minn. 519, 198 N. W. 2d 558 (1972), under statutes and ordinances which set forth definitive, objective guidelines for the issuance of licenses so that the decision to grant or deny a license is not left to the discretion of a public

denied. On November 20, 1974, the trial court granted the city's motion for summary judgment. In conjunction with plaintiff's appeal from the trial court, plaintiff moved this court for a temporary injunction pending the outcome of this appeal. That motion was denied without prejudice to plaintiff's right to renew the motion at oral argument. Because of our disposition of this case, it is not necessary for us to rule on plaintiff's motion.

[5] U. S. Const. Amend. I provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, or to petition the government for a redress of grievances." The protections of the First Amendment are made applicable to the states by the Fourteenth Amendment. Stromberg v. California, 283 U. S. 359, 51 S. Ct. 532, 75 L. ed. 1117 (1931).

[6] Of course, obscene motion pictures are not constitutionally protected free speech. Paris Adult Theatre I v. Slaton, 413 U. S. 49, 93 S. Ct. 2628, 37 L. ed. 2d 446 (1973).

official. Staub v. City of Baxley, 355 U. S. 313, 78 S. Ct. 277, 2 L. ed. 2d 302 (1958); Kunz v. New York, 340 U. S. 290, 71 S. Ct. 312, 95 L. ed. 280 (1951). And, as is the case in licensing any activity, the standards for excluding persons from engaging in the licensed activity must bear a reasonable relationship to their qualifications to engage in that activity.

It has been suggested that the power of the city to grant or deny a license to operate a motion picture theater is coextensive with the power of the city to grant or deny a license to operate any other legitimate business. Proponents of this argument point to the fact that the city may deny a license to sell liquor or to operate a massage parlor to an applicant who has been convicted of a crime bearing a reasonable relationship to the business for which the license is sought. They argue by analogy that the city may also deny a license to operate a motion picture theater to an applicant who has been convicted of a crime relating to obscenity. However, when the city licenses a motion picture theater, it is licensing an activity protected by the First Amendment, and as a result the power of the city is more limited than when the city licenses activities which do not have First Amendment protection, such as the business of selling liquor or running a massage parlor.[7]

These limits found expression in the leading case of Near v. Minnesota, 283 U. S. 697, 51 S. Ct. 625, 75 L. ed. 1357 (1931). In Near, the United States Supreme Court held that it is the essence of censorship to suppress the future publication of a newspaper as a public nuisance because, in the past, that newspaper had published scandalous and defamatory matter. The statute that the United States Supreme Court struck down in Near declared that any firm engaged in "producing, publishing or circulating, having in possession, selling or giving away (a) an

---

[7] There is no question that a municipality in determining whether to grant or deny a license to operate a motion picture theater may inquire to determine whether or not a theater meets authorized zoning, health, fire, building, and safety requirements.

obscene, lewd and lascivious newspaper, magazine, or other periodical, or (b) a malicious, scandalous and defamatory newspaper, magazine or other periodical, is guilty of a nuisance * * *." L. 1925, c. 285, § 1.

In discussing this statute, the court stated (283 U. S. 713, 51 S. Ct. 630, 75 L. ed. 1366):

"The question is whether a statute authorizing such proceedings in restraint of publication is consistent with the conception of the liberty of the press as historically conceived and guaranteed. In determining the extent of the constitutional protection, it has been generally, if not universally, considered that it is the chief purpose of the guaranty to prevent previous restraints upon publication."

In attempting to justify that statute, it was argued that it dealt not with publication per se but with the business of publishing defamation. The court said in reply to this argument (283 U. S. 720, 51 S. Ct. 632, 75 L. ed. 1369):

"* * * If, however, the publisher has a constitutional right to publish, without previous restraint, an edition of his newspaper charging official derelictions, it cannot be denied that he may publish subsequent editions for the same purpose. He does not lose his right by exercising it."

The standard for license revocation under St. Paul Legislative Code, § 372.04(G), a past conviction relating to obscenity, attempts to accomplish the same purpose as the statute struck down in Near. Section 372.04(G) denies plaintiff the right to exercise a constitutionally protected right because of a past abuse of that right.

The remedy presently available to the city of St. Paul for plaintiff's past abuses lies not in the suppression of the right to show all films, but in criminal prosecutions for violations of con-

stitutional obscenity laws. The risk that criminal sanctions [8] will be insufficient to deter future violations of the ordinance cannot justify the city's attempt to revoke plaintiff's license in the face of his right to the free speech guaranty of the First Amendment.

The city's attempt to rescind plaintiff's license pursuant to § 372.04(G) is clearly a prior restraint of expression. As such, it comes to this court "bearing a heavy presumption against its constitutional validity." Bantam Books, Inc. v. Sullivan, 372 U. S. 58, 70, 83 S. Ct. 631, 639, 9 L. ed. 2d 584, 593 (1963). Such action by the city might escape constitutional infirmity if operation by plaintiff of a motion picture theater presented a clear and present danger of a substantive evil. However, there is nothing to indicate that the operation of a theater by plaintiff could present such a danger. We therefore hold that § 372.04(G) is unconstitutional on its face.

In reaching our decision, we have looked for guidance to the decisions of other states. In Perrine v. Municipal Court, 5 Cal. 3d 656, 97 Cal. Rptr. 320, 488 P. 2d 648 (1971), certiorari denied, 404 U. S. 1038, 92 S. Ct. 710, 30 L. ed. 2d 729, the California Supreme Court declared a licensing statute similar to the one here to be unconstitutional on its face as an invalid prior restraint on the exercise of freedoms guaranteed by the First Amendment. That court, speaking through Mr. Chief Justice Wright (5 Cal. 3d 659, 97 Cal. Rptr. 321, 488 P. 2d 649), held:

"* * * [I]t is constitutionally impermissible to deny an applicant a license to operate a bookstore solely upon the ground that he has suffered a prior criminal conviction."

In that case, the applicant had been convicted under § 311.2 of the California Penal Code of selling, distributing, or exhibiting obscene matter, and a license to operate a bookstore was not is-

---

[8] For example, a violation of St. Paul Legislative Code, § 476.01, under which Bernard J. Richards was convicted, is a misdemeanor punishable by a fine of not more than $300, or a sentence of not more than 90 days, or both.

sued because of the conviction. The California court, in striking down the licensing statute, stated (5 Cal. 3d 664, 97 Cal. Rptr. 325, 488 P. 2d 653):

"* * * [S]ince a denial of a license would prohibit petitioner from engaging in an activity protected by the First Amendment, it could only be justified, even under a narrowly drawn ordinance, if permitting a person who had been convicted of a crime involving obscenity to operate a bookstore constituted a clear and present danger of a serious, substantive evil. [Citations omitted.] No such clear and present danger appears."

The California Supreme Court concluded by observing (5 Cal. 3d 665, 97 Cal. Rptr. 325, 488 P. 2d 653):

"* * * The penalty for violating section 311.2 [selling, distributing, or exhibiting obscene matter] does not include a forfeiture of First Amendment rights, and the risk that criminal sanctions will be insufficient to deter future violations of that section cannot justify the county's attempted forfeiture of those rights on the theory that past violators are unfit to operate bookstores."

The Washington Supreme Court has also considered this question. In City of Seattle v. Bittner, 81 Wash. 2d 747, 751, 505 P. 2d 126, 128 (1973), that court struck down an ordinance which denied to certain persons, i.e., "those who in the opinion of the city council are not of good character, and those who have been convicted of a certain type of crime within a specified period," the right to engage in the business of showing motion pictures. In that case the city of Seattle had denied an application for renewal of a motion picture theater license on the grounds that one of the applicant's officers had been convicted of exhibiting obscene motion pictures. That court termed the ordinance one "designed to place a restraint upon the conduct of a lawful business, upon private property, which involves the exercise of one of the fundamental freedoms—the freedom of expression—which is protected under both the federal and state constitu-

tions." 81 Wash. 2d 754, 505 P. 2d 130. The court held that the particular ordinance before it constituted an impermissible form of prior restraint because it did not purport to restrain only the showing of obscene motion pictures and because there was no provision for procedural safeguards, concluding (81 Wash. 2d 756, 505 P. 2d 131):

"* * * [W]e are convinced that the constitution does not permit a licensing agency to deny to any citizen the right to exercise one of his fundamental freedoms on the ground that he has abused that freedom in the past. No case is cited which supports such a proposition and our research has revealed none."

In Avon 42nd Street Corp. v. Myerson, 352 F. Supp. 994 (1972), the United States District Court for the Southern District of New York struck down a motion picture licensing ordinance which permitted suspension of a license because of a prior obscenity conviction. That court said (352 F. Supp. 998):

"* * * To permit the suspension of operation of a theatre on the basis of a prior conviction even for obscenity, amounts to an unconstitutional suppression of protected freedom of expression."

The court went on to say that the suspension of a license has as its direct result the prevention of a motion picture exhibitor from showing films. If all the films which do not reach the public are obscene, then there is no First Amendment problem since there is no prior restraint of protected expression. The vice of the ordinance, according to the court, was that it contained no assurance that only obscene movies would be banned.

Accord, Interstate Circuit, Inc. v. City of Dallas, 249 F. Supp. 19 (N. D. Texas 1965). See, also, Village Books, Inc. v. District of Columbia Bd. of Appeals & Review, 296 A. 2d 613 (D. C. App. 1972); City of Chicago v. Town Underground Theater, Inc. 9 Ill. App. 3d 930, 293 N. E. 2d 367 (1973); Marks v. City of Newport, 344 F. Supp. 675 (E. D. Ky. 1972); State ex rel. Little Beaver Theater Inc. v. Tobin, 258 So. 2d 30 (Fla. App. 1972);

Huffman v. Pursue Ltd. (D. C. N. D. Ohio 1973) (argued before U. S. Supreme Court December 10, 1974, 43 U. S. Law Week 3346); Oregon Bookmark Corp. v. Schrunk, 321 F. Supp. 639 (D. Ore. 1970). Contra, 106 Forsyth Corp. v. Bishop, 362 F. Supp. 1389 (M. D. Ga. 1972), affirmed, 482 F. 2d 280 (5 Cir. 1973) (per curiam), petition for certiorari filed, 43 U. S. Law Week 3050 (January 31, 1974).

The city suggests that our holding today means that the city will be forced to "pursue endless criminal prosecutions against a known pornographic establishment." This is not necessarily the case. It has recently been reaffirmed by the United States Supreme Court that obscenity—particularly, obscene motion pictures—is not constitutionally protected free speech. Miller v. California, 413 U. S. 15, 93 S. Ct. 2607, 37 L. ed. 2d 419 (1973); Paris Adult Theatre I v. Slaton, 413 U. S. 49, 93 S. Ct. 2628, 37 L. ed. 2d 446 (1973); Roth v. United States, 354 U. S. 476, 77 S. Ct. 1304, 1 L. ed. 2d 1498 (1957). The city may, if it chooses to do so, punish those found guilty of exhibiting obscene motion pictures under constitutionally valid ordinances. See, e. g., Miller v. California, *supra*; Paris Adult Theatre I v. Slaton, *supra;* Kaplan v. California, 413 U. S. 115, 93 S. Ct. 2680, 37 L. ed. 2d 492 (1973). Our only holding today is that the particular form of prior restraint embodied in § 372.04(G) is unconstitutional.

The failure of the scheme embodied in § 372.04(G) is that it is impossible under such a scheme to ensure that only obscene films will be suppressed in the future. This does not mean, however, that the city is not free to devise another method which avoids this constitutional infirmity.

In Freedman v. Maryland, 380 U. S. 51, 58, 85 S. Ct. 734, 739, 13 L. ed. 2d 649, 654 (1965), the United States Supreme Court stated that a noncriminal process of prior restraint may avoid "constitutional infirmity * * * if it takes place under procedural safeguards designed to obviate the dangers of a censorship system." The Freedman decision permits a state to set up a system whereby films are reviewed and licensed on an indi-

vidual basis as long as the following procedural safeguards are met (380 U. S. 58, 85 S. Ct. 739, 13 L. ed. 2d 654) :

"* * * First, the burden of proving that the film is unprotected expression must rest on the censor. As we said in Speiser v Randall, 357 US 513, 526, 2 L ed 2d 1460, 1473, 78 S Ct 1332, 'Where the transcendent value of speech is involved, due process certainly requires . . . that the State bear the burden of persuasion to show that the appellants engaged in criminal speech.' Second, while the State may require advance submission of all films, in order to proceed effectively to bar all showings of unprotected films, the requirement cannot be administered in a manner which would lend an effect of finality to the censor's determination whether a film constitutes protected expression. The teaching of our cases is that, because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint. See Bantam Books, Inc. v Sullivan, supra; A Quantity of Books v Kansas, 378 US 205, 12 L ed 2d 809, 84 S Ct 1723; Marcus v Search Warrant, supra; Manual Enterprises, Inc. v Day, 370 US 478, 518-519, 8 L ed 2d 639, 663, 664, 82 S Ct 1432. To this end, the exhibitor must be assured, by statute or authoritative judicial construction, that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film. Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution. Moreover, we are well aware that, even after expiration of a temporary restraint, an administrative refusal to license, signifying the censor's view that the film is unprotected, may have a discouraging effect on the exhibitor. See Bantam Books, Inc. v Sullivan, supra. Therefore, the procedure must also assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license."

.

Maryland has adopted such a system and its constitutionality has been upheld by a three-judge Federal District Court and by the United States Supreme Court. Star v. Preller, 375 F. Supp. 1093 (D. Md.), affirmed, 419 U. S. 956, 95 S. Ct. 217, 42 L. ed. 2d 173 (1974).

Under the Maryland statute, the censor board must decide within five days of a film's submission whether the board will grant or deny a license. Within three days of a denial of a license, the board must initiate proceedings in the Circuit Court of Baltimore City for an independent review of the obscenity of the film. The Circuit Court of Baltimore City must hold a hearing within five days of the application for judicial review. The court must issue its decision within two days of the hearing. The exhibitor may appeal on adverse decision to the Maryland Court of Special Appeals where the case must receive priority on the judicial calendar. Further appeal to the Court of Appeals is possible by writ of certiorari. The censor board has the burden of proof at all stages of the proceedings. See, Md. Ann. Code, Art. 66A, § 19.[9]

Of course, the decision to adopt any system of censorship is a legislative one and not one for the courts. We only intend to point out the existence of another means to control the exhibition of legally obscene motion pictures and express no opinion as to the relative merits or demerits of such a system.

Because we hold that St. Paul Legislative Code, § 372.04(G), is unconstitutional, the action of the city of St. Paul in revoking plaintiff's license was invalid. Therefore, the decision of the trial court is reversed.

Reversed.

---

[9] The complete text of Md. Ann. Code, Art. 66A, § 19, may be found in Star v. Preller, 352 F. Supp. 530, 536, n. 9 (D. Md. 1972), remanded, 413 U. S. 905, 93 S. Ct. 3054, 37 L. ed. 2d 1016 (1973).