Leroy WENDLING and John Sarette, Plaintiffs,

v.

The CITY OF DULUTH, A Municipal Corporation; William Dinan, Individually and as City Attorney for the City of Duluth; Milo Tasky, Individually and as Chief of Police of the City of Duluth; Elnora Johnson, Individually and as President of the City Council in the City of Duluth; and John Fedo, Individually and as Mayor of the City of Duluth, Defendants.

Civ. 5–80–114.

United States District Court,
D. Minnesota,
Fifth Division.

Sept. 3, 1980.

Randall D. B. Tigue, Benjamin S. Houge, Minneapolis, Minn., for plaintiffs.

William P. Dinan, Duluth City Atty., John Smedberg and Robert A. Plesha, Asst. City Atty., Duluth, Minn., for defendants.

## MEMORANDUM & ORDER

DEVITT, Chief Judge.

This is an action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief for alleged violations of the plaintiffs' constitutional rights as guaranteed by the First and Fourteenth Amendments. Plaintiffs are also seeking an award of costs and attorneys' fees pursuant to 42 U.S.C. § 1988. This court has jurisdiction under 28 U.S.C. §§ 1343(3), 2201 and 2202. Involved is an attack on the constitutionality of two Duluth city ordinances relating to licensing, Duluth City Ordinance 80–027 0, Sections 5–17 through 5–22, Duluth City Code, enacted June 2, 1980 providing for the licensing of "adult bookstores," and the Duluth City Code, Chapter 31, the general licensing provisions for the City of Duluth.

Plaintiff's original complaint sought relief against the enforcement of only sections 5–17 through 5–22. Plaintiffs moved for a preliminary injunction barring enforcement of the bookstore licensing ordinance. At the hearing for the preliminary injunction, counsel for defendants indicated that the general licensing provisions found in Chapter 31 of the Duluth City Code also applied to adult bookstores as defined in section 5–17 of the ordinance. At that hearing the parties agreed to try the case on stipulated facts and plaintiffs withdrew their motion for the preliminary injunction in return for the defendants' agreement not to enforce the adult bookstore licensing ordinance pending a resolution of this matter on the merits. Thereafter, by agreement of the parties, the plaintiffs amended their complaint to include a constitutional attack on the general licensing ordinance, Duluth City Code, Chapter 31.

Pursuant to the agreement reached at the hearing on plaintiff's preliminary injunction motion, the parties have stipulated the facts as follows:

1. Plaintiff Leroy Wendling is a citizen of the United States and of the State of Minnesota. He is currently proprietor of two "adult only," bookstores, A to Z Bookstore, located at 117 East Superior Street, and the Wabasha Bookstore, located at 123 East Superior Street, both within the City of Duluth, Minnesota.

2. Plaintiff John Sarette is a citizen of the United States and of the State of Minnesota. He is currently employed as a clerk at the above–mentioned A to Z Bookstore within the City of Duluth, Minnesota.

3. Defendant City of Duluth is a municipal corporation, organized under the laws of the State of Minnesota.

4. Defendant William Dinan is the City Attorney for the City of Duluth, and as such, is responsible for enforcing the laws and ordinances of the City of Duluth.

5. Defendant Milo Tasky is the Police Chief of the City of Duluth, and as such, is directly responsible for enforcement, by way of arrest, of the laws and ordinances enacted by the City of Duluth.

6. Defendant Elnora Johnson is President of the City Council of the City of Duluth, which is the legislative branch of city government and is responsible for the enactment of municipal ordinances, including the ordinance which is the subject of the present lawsuit.

7. Defendant John Fedo is the Mayor of the City of Duluth, and as such is the Chief Executive Officer for said city.

8. On June 2, 1980, the Duluth City Council passed Ordinance No. 80–027 0, entitled: "AN ORDINANCE PROVIDING FOR THE LICENSING OF ADULT BOOKSTORES: ADDING A NEW ARTICLE IV TO CHAPTER FIVE, DULUTH CITY CODE, 1959, AS AMENDED," a true and correct copy of which is attached to be made a part of this fact stipulation.[1]

9. The A to Z Bookstore and Wabasha Bookstore fall within the definition of "Adult Bookstore" as set forth in Section 5–17 of Ordinance No. 80–027 0.

---

1. Ordinance 80–027, cited herein as Sections 5–17 through 5–22, Duluth City Code, provides for the licensing of "adult bookstores" in the City of Duluth. Rather than set forth the full text herein, portions relevant to the issues raised in this action are set forth and discussed in the text of the court's opinion.

10. The City of Duluth would not expend $500.00 per licensed adult bookstores in the ministerial operation of checking the location of bookstores and issuing licenses to such bookstores.[2]

11. The total cost of regulating and policing adult bookstores, as defined in Ordinance No. 80–027 0, that has been incurred by the City of Duluth on a yearly average since October 29, 1973, the date on which Duluth's current obscenity ordinances (Sections 34–12 and 34–13 of the Duluth City Code) were passed equals or exceeds $500 per year, per store, if the cost of police investigation and prosecution for violations of Duluth's obscenity ordinances are included.

12. Since October 29, 1973, the date on which Duluth's current obscenity ordinances took effect, judges and judicial officers in St. Louis County Court have issued 77 warrants for the arrest of persons operating adult bookstores on charges of selling obscene materials. These warrants resulted in five trials where defendants were found not guilty at trial, six complaints were dismissed by the trial court for various grounds, and at least fifty–two were found guilty at trial. In the remainder of cases, police were unable to serve warrants or court and police records are not complete or clear. All but three of these convictions were dismissed by the City during the appellate process or reversed, either at the District Court or the Minnesota Supreme Court.

The parties have also stipulated that the A to Z Bookstore, located at 117 East Superior St., and the Wabasha Bookstore located at 123 East Superior St., both within the City of Duluth, were in existence and operating prior to the enactment of Duluth City Ordinance 80–027 0, on June 2, 1980.

## I. DISCUSSION

### A. The Adult Bookstore Licensing Ordinance

The aim of Duluth City Ordinance 5–18 through 5–22 is set forth in section 5–18 [3] which finds that the existence of adult bookstores in close proximity to churches, schools, parks, residential zones and public skywalks is inimical to the public good. The ordinance sets forth certain minimum distance requirements for the location of such bookstores in relation to churches, schools, parks, and residential zones and prohibits their location on a public skywalk. It is provided that no license shall issue if these distance requirements are not complied with, but exempts current owners and operators of bookstores existing at the time the ordinance was passed from these requirements provided there is no change in location. Existing bookstores are required, however, to obtain a license. The license fee is $500, and the license must be renewed on a yearly basis.

Two issues are presented involving Sections 5–17 through 5–22 of the Duluth City Code. The first is the constitutionality of requiring a license of the plaintiffs. The second is the constitutionality of the requirement of a $500 fee, which is admittedly to be used for the enforcement of the city's obscenity ordinance, Section 34–12, Duluth City Code.

---

2. Section 5–20 provides that a $500 license fee shall accompany each application for a license.

3. Section 5–18 provides,
The city council of the City of Duluth hereby finds that the operation of adult bookstores in or near churches, schools, parks, residential zones and public skywalks tends to have a deleterious effect upon such churches, schools, parks, residential zones and skywalks because of objectionable characteristics that are inherent in the operation of adult bookstores. The city council of the City of Duluth further finds that adult book-

stores which are in operation in or near churches, schools, parks, residential zones and public skywalks are contrary to the public interest, are harmful to public morals and safety, and constitute a nuisance. The city council of the City of Duluth further finds that it is necessary to regulate the location of adult bookstores with respect to their respective distances from churches, schools, parks, residential areas and public skywalks, consistent with existing property rights and First Amendment rights of all the citizenry of the City of Duluth.

## 1. The License Requirement

■ Plaintiffs' first claim is that the license requirement constitutes a prior restraint on their right to freedom of expression guaranteed by the First Amendment. The United States Supreme Court has made it clear that a local government may regulate the location of adult bookstores without offending either the First or Fourteenth Amendments. *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). Moreover, such permissible regulation may be achieved by means of a licensing requirement. *See Young v. American Mini Theatres, Inc.*, 427 U.S. at 62, 96 S.Ct. at 2448; *Cox v. New Hampshire*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941).

Plaintiffs contend that, because the licensing ordinance is expressly intended to regulate the *location* of adult bookstores, and because it expressly exempts plaintiffs' stores from those requirements, requiring a license of plaintiffs constitutes a prior restraint. Defendants point out that the city may rightfully require licensing for the purpose of identifying adult bookstores and their ownership, and that this is also an aim of the licensing ordinance. *Cf. McMurdie v. Doutt*, 468 F.Supp. 766 (N.D.Ohio 1979) (religious solicitors could be required to identify themselves as part of licensing scheme).

Plaintiffs' argument also ignores the fact that they may become subject to the location requirements. Section 5–20 of the Ordinance provides that no license may be transferred to another location or person. Section 5–22 provides,

> *Persons* owning or operating adult bookstores that are in operation at the time of the passage of this ordinance shall be required to secure a license for such adult bookstores, but the provisions of section 5–21 . . . [location restrictions] . . . shall not apply to licenses issued to them for such pre–existing adult bookstores *as long as their location is not changed.*

(emphasis supplied). These sections provide that, upon a transfer of location or ownership, plaintiffs will become subject to the location restrictions. The yearly license requirement enables the city to monitor plaintiffs' compliance with these restrictions.

■ The city properly may require licensing of plaintiffs' business. Because the city may validly license for the purpose of identification of the owners of adult bookstores, and because plaintiffs are not in actuality completely exempted from the operation of the admittedly valid location proscriptions, the bookstore licensing ordinance sections 5–17 through 5–22 of the Duluth City Code do not offend the Constitution insofar as it requires plaintiffs to obtain a license.

## 2. The License Fee

Plaintiffs argue that the $500 yearly fee required by section 5–10 of the ordinance constitutes a prior restraint, and therefore is unlawful. They maintain that any fee imposed in connection with the issuance of the license must be related to the administration and enforcement of the licensing ordinance itself, and that since the funds are to be used to enforce the obscenity ordinance, the fee is unconstitutional.

■ Strict judicial scrutiny is required of the governmental imposition of fees which implicate fundamental rights. *See e. g., Lubin v. Panish*, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974). A leading case on the imposition of license fees in connection with the exercise of First Amendment rights is *Murdock v. Commonwealth of Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), in which the Supreme Court invalidated a municipal license fee upon persons soliciting for religious contributions. The Court held that a license fee must be a "nominal fee imposed as a regulatory measure to defray the expenses of policing the activities in question," and may not be a "flat license tax levied and collected as a condition to the pursuit of activities whose enjoyment is guaranteed by the First Amendment." *Id.* at 114, 63 S.Ct. at 875. The latter constitutes a prior restraint. *Id.*

■ The narrow question here is whether the imposition of a license fee to finance enforcement of a separate obscenity ordinance can be considered the permissible

policing of activities as prescribed in the *Murdock* case, or whether *Murdock* requires that the fee be no greater than is necessary to administer and enforce the licensing ordinance itself. A review of the case law suggests that the latter is the correct view.

In *Cox v. New Hampshire*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941), the Court upheld the imposition of a sliding scale of fees charged incident to obtaining constitutionally valid parade permits. The fees were upheld because they were "not a revenue tax, but one to meet the expense incident to the administration of the act and to the maintenance of public order in the matter licensed." *Id.* at 577, 61 S.Ct. at 766.

The principles enunciated in the *Murdock* and *Cox* decisions have been applied in a case involving license fees for "adult entertainment" establishments. In *Bayside Enterprises, Inc. v. Carson*, 450 F.Supp. 696 (M.D.Fla.1978) ("*Bayside I*"), the court struck down license fees consisting of $500 per application plus additional fees ranging up to $1200 on adult entertainment facilities. The court stated that the licensing authority must be "able to demonstrate that the fees were necessary to cover the *reasonable costs of the licensing system*, and that the fees were used for no other purpose than to meet those costs." (Emphasis supplied.) *Id.* at 705. When this burden is not met, the fee must be invalidated as a prior restraint. *Id.*

The court's later opinion in *Bayside Enterprises, Inc. v. Carson*, 470 F.Supp. 1140 (M.D.Fla.1979) ("*Bayside II*"), upholding a scaled down fee schedule in the same controversy, is cited by the defendants to support the proposition that the fees may be used to enforce the obscenity ordinance. Reading the two opinions together, this suggested view of the *Bayside II* decision is incorrect. The defendants rely on language in the second decision, stating,

> The ends to which the fee monies are to be used are unrelated to communication as such; rather, these monies are earmarked for an administrative system designed to police activity that is at most incidental to the type of business to be regulated. As it now stands, the Code

will merely serve perfectly valid municipal interests in public safety and welfare, most notably the presence of safe and sanitary conditions and the prevention of criminal conduct.

*Id.* at 1149. Nothing in this statement is inconsistent with the holding in *Bayside I*, limiting the assessment of fees to the administration of the licensing statute itself. *See also, Baldwin v. Redwood City*, 540 F.2d 1360, 1371 (9th Cir. 1976); *Chester Branch, N. A. A. C. P. v. City of Chester*, 253 F.Supp. 707, 714 (E.D.Pa.1966). Defendants cite no other case on point that permits the enforcement of a criminal obscenity ordinance with fees collected under a zoning ordinance that regulates establishments on the basis of content.

An excessive license fee is viewed as a tax on the exercise of the fundamental rights guaranteed by the First Amendment and hence is a prior restraint. *Murdock v. Commonwealth of Pennsylvania*, 319 U.S. at 114, 63 S.Ct. at 875. Requiring plaintiffs to bear the burden of the cost of enforcing the obscenity ordinance as a precondition to the exercise of their First Amendment rights constitutes such a prior restraint. Had the plaintiffs actually violated the obscenity ordinance in the past, the defendants could not use that as a ground to deny a license for an adult bookstore. *See Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); *Alexander v. City of St. Paul*, 303 Minn. 201, 227 N.W.2d 370 (1975). Nor should the possibility that plaintiffs may at some later date violate the obscenity ordinance subject them to an excessive license fee which presumes future obscenity violations.

Thus, Section 5–20 of the Duluth City Code, requiring the payment of a $500 license fee in order to obtain a license for the operation of an adult bookstore is an unconstitutional prior restraint. Plaintiffs are entitled to a permanent injunction against the enforcement of this provision.

### B. The General Licensing Ordinance

Chapter 31 of the Duluth City Code contains the general licensing requirement for

all activities licensed by the city with the exception of the sale of alcoholic beverages and the holding of bingo games. Section 31–1 expressly mandates that all licenses "except where otherwise specifically set out in this Code, shall be issued in accordance with the provisions of this chapter." Nothing in Sections 5–17 through 5–22 of the Code relating to adult bookstore licensing specifically exempts adult bookstores from the requirements of Chapter 31. Notwithstanding the fact that the city may require the kind of license described in Sections 5–17 through 5–22, the provisions of Chapter 31 governing the issuance of licenses must pass constitutional muster in order to require plaintiffs to obtain licenses for their stores.

Plaintiffs attack two provisions of the general licensing ordinance. Section 31–5 provides in part:

> Upon payment of all fees by the applicant and the filing of any necessary bonds or insurance and upon completion of the administration investigation required by any section of this Code or other ordinance of the city, *if the administrative assistant approves issuance of the license or permit requested*, the city clerk *may* issue such license or permit.

(emphasis supplied.) Plaintiffs argue that the ordinance gives the government officials unfettered discretion in deciding to issue licenses, which in this instance implicate First Amendment rights, and that therefore the provision constitutes an unlawful prior restraint.

While it is true that ordinances which require a permit to exercise First Amendment rights, and which fail to provide narrow, objective standards to guide the licensing authority are unconstitutional, *see e. g. Shuttlesworth v. City of Birmingham, Alabama*, 394 U.S. 147 (1968), the first issue to be addressed is whether or not, as plaintiffs contend, this statute does in fact give the officials unfettered discretion to deny a license application.

The language of Section 31–5 on its face appears to give the administrative assistant and the city clerk discretion to deny a license application. The city argues that

the governmental officials have only ministerial powers, and that the general licensing statute must be read together with the adult bookstore licensing ordinance to define these powers. It proposes that the adult bookstore licensing ordinance prescribes the limit of the government officials' discretion. The adult bookstore ordinance provides for the issuance of a license upon the filing of an application and the payment of the required fee. Once those requirements are fulfilled, together with the requirement contained in section 31–13 that proof of payment of real estate taxes be filed, the approval must be given and the license issued. Plaintiffs argue that this court would have to authoritatively construe section 31–5 to reach this result, and in light of the absence of any authoritative state court construction, this court may not impose an authoritative construction upon the express terms of the ordinance. *See United States v. Thirty Seven Photographs*, 402 U.S. 363, 369–70, 91 S.Ct. 1400, 1404–1405, 28 L.Ed.2d 822 (1971). While this court has doubts about its authority to construe the ordinance as proposed by the city, it is not necessary to reach the issue of whether or not such a reading of the statute would constitute an "authoritative" construction. The statutory scheme contained in Chapter 31 of the Duluth City Code suffers from a constitutional infirmity which this court clearly cannot cure through a saving construction.

Section 31–11 provides, "In the event an application for a license or permit is denied, the applicant may apply to the city council in writing for the issuance of the license." The United States Supreme Court has made it clear that certain procedural safeguards must be provided an applicant by a licensing scheme that impinges upon First Amendment freedoms. In *Freedman v. State of Maryland*, 380 U.S. 51, 58–59, 85 S.Ct. 734, 738–739, 13 L.Ed.2d 649 (1965), the Court set forth the procedural safeguards that must be provided: The statute must provide that the licensor will, within a specific brief time period, issue the license or have the burden of going to court to restrain the protected activity; any re-

straint imposed in advance of a final judicial disposition on the merits be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution; and the procedure must assure a prompt final judicial decision to minimize any deterrent effect on expression protected by the First Amendment and the erroneous denial of a license. These procedural safeguards must be part of a licensing scheme which requires a license as a prerequisite to operating an adult bookstore, an activity entitled to First Amendment protection. *See Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975).

Section 31–5 furnishes none of these procedural protections. This court would have to authoritatively construe the statute to give authority to the city administrative office to seek judicial review, and create the mechanisms for carrying it into effect. In the absence of an authoritative construction by the Minnesota Court, this we cannot do. *See United States v. Thirty Seven Photographs,* 402 U.S. at 369–70, 91 S.Ct. at 1404–1405. Even assuming that the government officials responsible for issuing the license have no discretion to refuse to issue a license if the proper forms are filled out, appropriate fee paid, and proof of payment of taxes made, the lack of the necessary procedural safeguards in the ordinance render it facially unconstitutional. *See ISKON v. Rochford,* 585 F.2d 263 (7th Cir. 1978). An applicant arbitrarily denied a license to engage in the exercise of First Amendment rights by an official vested with only ministerial powers is no less entitled to procedural safeguards than if denied a license by an official vested with broader discretion to grant or deny licenses.

### C. Effect of the Partial Invalidity of the Ordinances

While defendants constitutionally may require plaintiffs to obtain the type of license required by sections 5–17 through 5–22, the unconstitutionality of the provision relating to the license fee and the complete invalidity of Chapter 31 because of the lack of the necessary procedural safeguards prohibit defendants from requiring

plaintiffs to obtain a license. There is no way that the bare license requirement can stand independently of the provision relating to issuance and payment of the fee. *See Buckley v. Valeo,* 424 U.S. 1, 75–76, 96 S.Ct. 612, 661–662, 46 L.Ed.2d 659 (1976). The license requirement found in Sections 5–19 through 5–22 is rendered inoperative by the partial invalidity of that ordinance and the invalidity of Chapter 31. *See United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968).

Accordingly, we hold that Section 5–20 Duluth City Code, requiring payment of a $500 license fee, admittedly to be used to finance prosecution of the plaintiffs for alleged violations of a separate obscenity ordinance, is an unlawful prior restraint and is thus unconstitutional. We also hold that Chapter 31 of the Duluth City Code, insofar as it prescribes the means by which licenses are issued pursuant to Sections 5–17 through 5–22, is unconstitutional for the reasons stated. It is therefore ordered that defendants are permanently enjoined from enforcing the provisions of Sections 5–17 through 5–22 of the Duluth City Code and Chapter 31, Duluth City Code, insofar as it operates in connection with Sections 5–17 through 5–22 of the Code. Plaintiffs may file and notice their separate petition and justification for costs and attorneys' fees.