MR. JUSTICE SHEEHY,
dissenting:
It is not an easy or pleasant task to defend the purveyors of sexually-explicit films from a confiscatory tax in the guise of a license fee. Yet, the constitutional protection of the First Amendment is like the air we breathe, it is there for the good and the bad. For the same reasons that I would strike down a law that levied a $2,000 annual license fee on individual lawyers (proposed in the 50th Legislature) I must urge striking down the exorbitant license fee in this case. License fees are levied under the police power of the state and their assessment cannot go beyond the cost of policing the activity licensed, otherwise exorbitant fees violate the principle of uniform taxation, and are held to be confiscatory. If the First Amendment is involved, there is additionally a problem of prior constraint. Once permitted, exorbitant license fees will be enacted on the wildest speculation and spread to other, perhaps cleaner endeavors. As the Spanish proverb said, “When you see your neighbor being shaved, prepare yourself for the barber.”
The claimed costs by the city in justifying the license fee are exaggerated or illusory. For example, of the 455 venereal disease cases in Cascade County in 1982, two were traced to contacts at an adult bookstore. No further incidence of venereal disease traceable to adult bookstores or adult film booths have occurred in that county to the time of trial here. Yet the majority allow $1,400.00 per year in expenses for a stakeout, and $2,155.19 in annual city and county health costs as if these were annual recurring costs.
The detectives in this case have acknowledged that they found no instances of child pornography in the time that these booths have existed in Great Falls. It is a crime in Montana, Section 45-5-625, MCA, to use a child for or to expose him to pornographic material anywhere in the State. At the present time the City of Great Falls has no program for enforcement of this act. If the statute were to be enforced by the City of Great Falls, the cost of enforcement should be an obligation of the general taxpayers.
Likewise it is a crime under Section 45-8-201, MCA, purposely or *298 knowingly to provide, sell or deliver obscene material to anyone under age 18. This statute applies everywhere in the State of Montana. The City of Great Falls has no present program for the enforcement of the obscenity statute. Again the enforcement, if and when it occurs in the City of Great Falls should be an obligation of the general taxpayers.
It is likewise a crime in the State of Montana to engage in deviate sexual conduct under Section 45-5-505, MCA. No instance of a prosecution for such conduct related to the booths appears in the evidence of this case. If there is a program for enforcement of this statute in the City of Great Falls, again it should he the obligation of the general taxpayers.
In Wendling v. City of Duluth (D.C. Minn. 1980), 495 F.Supp. 1380, 1384, 1385, the Court said:
“The narrow question here is whether the imposition of a license fee to finance enforcement of a separate obscenity ordinance can be considered the permissible policing of activities as prescribed in the Murdock case, or whether Murdock requires that the fee be no greater than is necessary to administer and enforce the licensing ordinance itself. A review of the case law suggests that the latter is the correct view.”
The majority rely upon Bayside Enterprises, Inc. v. Carson (D.C. Fla. 1979), 470 F.Supp. 1140. In that case, the Court upheld a $35 license fee. It was a follow-up case from an earlier one, Bayside Enterprises, Inc. v. Carson (M.D. Fla. 1978), 450 F.Supp. 696, that struck down a $100 fee on the grounds that the fee was speculative because the projected costs of enforcing a licensing ordinance for adult bookstores was unreasonable.
I would strike down the $300 fee as unreasonable, and because of its unreasonableness, a prior constraint on the First Amendment rights of the licensees. •
MR. JUSTICE HUNT concurs in the dissent of MR. JUSTICE SHEEHY.