# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1869

_____

Jake's, Ltd., Inc.; Richard J. Jacobson,    *
                            *

     Plaintiffs - Appellants,    *
                            *    Appeal from the United States

     v.                              *    District Court for the
                            *    District of Minnesota.

City of Coates,    *
                            *

     Defendant - Appellee.    *

_____

Submitted: November 12, 2001

Filed: March 26, 2002

_____

Before LOKEN, LAY, and HEANEY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Jake's Bar in Coates, Minnesota, has featured live nude dancing since early 1992. Coates is a town of 182 people located fifteen miles southeast of St. Paul. The Coates City Council enacted a zoning ordinance in 1994 that strictly limited the location of sexually oriented businesses. Jake's sued, and the district court declared that the ordinance unconstitutionally infringed the First Amendment protection afforded to nude dancing as a form of expressive conduct. The City then enacted an amended zoning ordinance and a restrictive licensing ordinance. Jake's sued again. Ruling on cross motions for summary judgment, the district judge upheld the current ordinances. Jake's appeals. We modify one portion of the judgment and affirm.

# I. Background.

Nude dancing is expressive conduct protected by the First Amendment, "though . . . only marginally so." Barnes v. Glen Theatre, Inc., 501 U.S. 560, 565-66 (1991) (plurality opinion). The Supreme Court has held that state and local laws prohibiting public nudity may constitutionally be applied to businesses such as Jake's, despite the limited First Amendment protection afforded totally nude dancing. See City of Erie v. Pap's A.M., 529 U.S. 277, 296-302 (2000) (plurality opinion); Barnes, 501 U.S. at 567-72 (plurality opinion). But the City of Coates elected to proceed differently. Rather than ban public nudity altogether, its 1994 ordinance regulated the time, place, and manner in which Jake's as a sexually oriented business may present live nude dancing to its customers. It is now well-established that this type of regulation is permissible under the First Amendment *provided* the ordinance is justified without reference to the content of the regulated speech, is designed to promote a substantial government interest, and allows reasonable alternate avenues for communication. City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 48-50 (1986). We have applied this test in numerous cases in which various adult entertainment businesses challenged local zoning and licensing ordinances. See BZAPS, Inc. v. City of Mankato, 268 F.3d 603, 605 (8th Cir. 2001) (nude dancing); ILQ Investments, Inc. v. City of Rochester, 25 F.3d 1413, 1416 (8th Cir.) (adult bookstore), cert. denied, 513 U.S. 1017 (1994); Ambassador Books & Video, Inc. v. City of Little Rock, 20 F.3d 858, 861-63 (8th Cir.) (adult bookstore), cert. denied, 513 U.S. 867 (1994); Holmberg v. City of Ramsey, 12 F.3d 140, 142 (8th Cir. 1993) (adult bookstore and novelty shop), cert denied, 513 U.S. 810 (1994); Alexander v. City of Minneapolis, 928 F.2d 278, 283-84 (8th Cir. 1991) (adult theater).

The 1994 zoning ordinance provided that sexually oriented businesses must be located within an agricultural zone and must be at least 750 feet from specified uses, including other sexually oriented businesses, single- or multi-family dwellings, churches, schools, bars, and public parks. The ordinance also required all

nonconforming sexually oriented businesses to cease operations by December 31, 1996. This type of delayed prohibition is known as an amortization provision because it justifies the removal of a nonconforming use by giving the owner a period of time to recoup (amortize) its investment before it must relocate. Jake's present location did not comply with the 1994 ordinance because it is not in an agricultural zone and is less than 750 feet from a residence. Thus, the amortization provision if valid would force Jake's to relocate.

Jake's filed a lawsuit in state court challenging the 1994 ordinance in late 1996. After the City removed, the district court declared the ordinance unconstitutional because the requirement that a portion of any new subdivision of agriculturally zoned land be donated as parkland did not leave any site to which Jake's could lawfully relocate (as the ordinance prohibited Jake's from locating near a public park). However, Judge Richard H. Kyle's opinion further stated:

> [I]f Coates' requirement for land dedication for subdivision were altered either to allow some non-discretionary alternative (equivalent fee in lieu of the land dedication) or to limit the land dedication requirement to certain types of subdivision (i.e., subdivisions over a certain size), much of the land in the four quadrants [containing possible relocation sites] would be rendered available for a sexually oriented business. The Court sees the discretionary aspect of the waiver of the land dedication requirement to be the only obstacle to Coates' zoning ordinance passing constitutional muster.

Rather than appeal Judge Kyle's decision, the City amended its zoning ordinance to correct this constitutional deficiency by making the parkland dedication requirement nondiscretionary and permitting a developer to make a "cash park dedication" in lieu of dedicating land. The City also enacted a licensing ordinance imposing numerous restrictions on sexually oriented businesses. As relevant to this appeal, the ordinance restricted persons with a criminal history for sex related

offenses from obtaining a license, imposed license and investigation fees, required that dancers and patrons be at least six feet apart at all times, and prohibited dancers from soliciting and customers from offering gratuities.

Jake's commenced this action in state court challenging the new zoning and licensing ordinances. The City again removed, and the case was assigned to Judge Donovan W. Frank. On cross-motions for summary judgment, Judge Frank upheld the challenged ordinances but stayed his order pending appeal, thereby permitting Jake's to remain open. Jake's, Ltd. v. City of Coates, 176 F. Supp. 2d 899, 905-11, and 169 F. Supp. 2d 1014, 1017-19 (D. Minn. 2001). Jake's appeals, renewing its challenges to the current zoning and licensing ordinances.

## II. Zoning Issues.

City of Renton requires that an ordinance restricting adult entertainment be content-neutral, promote a substantial government interest, and allow reasonable alternate avenues for communication. 475 U.S. at 48-50. Two of those requirements are not at issue in this case. Jake's concedes the ordinances at issue are content neutral. See also ILQ, 25 F.3d at 1416 (even if an ordinance regulates only sexually oriented businesses, it is content-neutral "if its purpose is to lessen undesirable secondary effects attributable to those businesses"). And the final aspect of the City of Renton test -- whether the zoning ordinance allows reasonable alternative avenues for communication -- is no longer an issue because Judge Kyle's initial decision told the City how to amend the ordinance to cure a prior defect, the City amended the ordinance accordingly, and Jake's does not argue it has no reasonable alternative site where it may now relocate.

Jake's argues that the Coates ordinance fails the City of Renton test because the City had an insufficient evidentiary basis to conclude that its zoning restrictions further a substantial government interest. The ordinance is intended to reduce

-4-

criminal activity, prevent the deterioration of residential neighborhoods, and eliminate the "dehumanizing influence" that sexually oriented businesses may have on churchgoers, park users, and daycare clients. These are commonly known as the adverse "secondary effects" of adult entertainment enterprises. It is well-settled that a city's interest in preserving the quality of urban life and the character of its neighborhoods justifies zoning restrictions intended to minimize such effects. See Young v. American Mini Theatres, Inc., 427 U.S. 50, 71 (1976) (plurality opinion).

In making its secondary effects findings, the City relied on previous studies by Phoenix, Seattle, Indianapolis, Rochester (Minnesota), St. Paul, and the Minnesota Attorney General. The City also relied on a 1999 memorandum by the City Attorney reviewing these studies and reporting that 17 of 38 crimes prosecuted by the City since December 1993 were "Jake's related." Jake's countered with an expert's study opining that the City Attorney erred in attributing many of the 17 crimes to Jake's. Relying on this study, Jake's argues that the police activity due to Jake's is on a par with that at The House of Coates, a local bar that does not have nude dancing, and therefore the City's crime statistics do not support regulating Jake's on the basis of this secondary effect. In addition, pointing to evidence that property values near Jake's have increased in recent years, Jake's argues the City has no evidence that sexually oriented businesses contribute to economic blight. Therefore, Jake's concludes, the City Council had no evidence supporting its conclusion that the zoning ordinance would reduce adverse secondary effects. We disagree.

Leaving aside whether the record is adequate to show the adverse secondary effects of crime and economic blight, Jake's argument is flawed because it ignores the City's reliance on studies showing that proximity to sexually oriented businesses results in adverse secondary effects on residential neighborhoods, churches, schools, and other land uses that would be lessened by an ordinance imposing distance restrictions as great or greater than the 750 foot restriction in the Coates ordinance. The appropriate location of various land users is a prime objective of municipal

zoning. And a city need not conduct its own studies to demonstrate that a proposed ordinance will serve to reduce adverse secondary effects, "so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." City of Renton, 475 U.S. at 51-52. See City of Erie, 529 U.S. at 297; Young, 427 U.S. at 55. We have repeatedly upheld as reasonable the reliance on secondary effects studies from other communities to justify distance restrictions of this type. See ILQ, 25 F.3d at 1417-18; Ambassador Books, 20 F.3d at 860; Holmberg, 12 F.3d at 142.

Jake's argues that this case is like Flanigan's Enter., Inc. of Ga. v. Fulton County, 242 F.3d 976 (11th Cir. 2001), petition for cert. filed, 70 U.S.L.W. 3091 (July 23, 2001) (No. 01-144), where the court reversed a grant of summary judgment because the County had not reasonably relied on studies from other communities. But Flanigan's is distinguishable in two critical respects. First, it involved a total ban on nude dancing in establishments that serve liquor, not a locational zoning restriction. 242 F.3d at 974. Thus, the adverse secondary effects from proximity to churches, schools, and other specific land uses were not at issue. Second, in Flanigan's, the County's own studies refuted the presence of the secondary effects on which it relied. 242 F.3d at 986. Here, though Jake's attacks the City's secondary effects findings, the City contends they are supported by the secondary effects evidence, including the City Attorney's 1999 report. Like the district court, we conclude the City relied upon secondary effects evidence it "reasonably believed to be relevant to the problem" it addressed in the zoning ordinance. City of Renton, 475 U.S. at 51-52.

Having no viable challenge to the City's zoning restrictions under City of Renton, Jake's attacks the amortization provision in the zoning ordinance. Jake's first argues that the state statute permitting municipalities to use amortization as a means of eliminating nonconforming adult businesses is unconstitutional. See Minn. Stat. § 462.357, subd. 1c. (2000). This argument is without merit. We have repeatedly upheld amortization provisions requiring nonconforming adult

entertainment businesses to relocate as part of a municipality's valid time, place, and manner regulation of such businesses. See Ambassador Books, 20 F.3d at 865; Holmberg, 12 F.3d at 142, 144; Alexander, 928 F.2d at 283-84. Here, the state statute merely authorizes municipalities to amortize nonconforming sexually oriented businesses. The relevant question is whether a municipality's use of that authority complies with the City of Renton standards. The State of Minnesota was under no constitutional obligation to study secondary effects in the abstract before granting this authority to local governmental bodies.

Jake's further argues that Coates may not invoke the statutory exception and impose amortization on Jake's because it does not qualify as a "similar adults-only business" under state law. The argument is contrary to the plain language of the statute,[1] but Jake's attempts to avoid this issue of statutory construction by arguing there is no "constitutional basis" for classifying Jake's as similar to an adults-only business, and the statutory language is in any event unconstitutionally vague. At this point, the argument becomes a jumble of federal and state law concepts. The simple and complete answer is that the Coates zoning ordinance as applied to Jake's passes muster under City of Renton, and the state statute permitting amortization of "adults-only" businesses is valid under deferential rational-basis review. Therefore, we affirm the district court's decision that the Coates zoning ordinances regulating sexually oriented businesses (found in Coates Ordinances Nos. 40 and 41) are constitutional.

---

[1]After prohibiting municipalities from using amortization to eliminate nonconforming uses, Minn. Stat. § 462.537, subd. 1c, provides that this restriction "does not apply to adults-only bookstores, adults-only theaters, or similar adults-only businesses, as defined by ordinance." The Coates zoning ordinance defines a sexually oriented business as "an adult book store, adult body painting studio, adult companionship establishment, adult motion picture theater, adult entertainment facility, adult modeling studio, adult mini motion picture theater, or adult sauna" and includes definitions of each type of adult business.

### III. Licensing Issues.

**A.** Jake's first argues that the licensing provisions in Coates Ordinance No. 36 constitute an unconstitutional prior restraint on free expression. "[I]n the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 757 (1988). Jake's does not challenge the provisions in Ordinance 36 governing issuance of an initial license, which impose time constraints on the approval process, require the use of objectively verifiable criteria, and provide for prompt judicial review, the constitutional requirements enumerated in the various opinions in FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 224-27, 239, 246, 249 (1990). Instead, Jake's argues that Ordinance 36 confers unbridled discretion in authorizing the City to *suspend* licenses if a sexually oriented business is conducted "in such a manner as . . . to constitute a menace to the health, safety, or general welfare of the community."

Jake's cites no authority for the proposition that the prior restraint standards of City of Lakewood and FW/PBS apply equally to license suspensions and revocations. The proposition is inherently suspect, because license revocation is necessarily less of a *prior* restraint than the initial licensing process. But in any event, we reject as frivolous the contention that an ordinance authorizing revocation if the licensee is "a menace to the health, safety, or general welfare of the community" confers unbridled discretion. This is a specific discretion-limiting standard not unlike the definition of a public nuisance long known to the law. See, e.g., Minn. Stat. § 609.74(1) (defining public nuisance as a condition which "endangers the safety, health, morals, comfort, or repose of any considerable number of members of the public").

Jake's further objects that the license renewal provision does not provide for a stay pending appeal if renewal is denied. Jake's did not raise this issue in the district court, and we decline to consider it.

**B.** Jake's next argues that Ordinance 36 unconstitutionally provides that a license may not issue to any person who "has had a conviction of a felony or a gross misdemeanor or misdemeanor relating to sex offenses, obscenity offenses, or adult uses in the past five (5) years." A similar restriction was upheld in <u>DLS, Inc. v. City of Chattanooga</u>, 107 F.3d 403, 414 (6th Cir. 1997). However, Jake's lacks standing to raise the issue because it made no showing that the restriction will disable its owners from obtaining a license. Therefore, the district court lacked jurisdiction to consider the issue, and we must vacate the grant of summary judgment upholding this provision in the ordinance. <u>See</u> <u>FW/PBS</u>, 493 U.S. at 234-35.

**C.** Jake's next argues that Ordinance 36 imposes a $2,500 fee that is constitutionally unreasonable. When core First Amendment freedoms are made subject to licensing, only revenue-neutral licensing fees may be imposed so that government is not charging for the privilege of exercising this constitutional right. <u>See</u> <u>Murdock v. Pennsylvania</u>, 319 U.S. 105, 115-16 (1943); <u>Cox v. New Hampshire</u>, 312 U.S. 569, 576-77 (1941). Jake's argues that this principle extends to the licensing of sexually oriented businesses, citing three district court decisions that referred to such fees as implicating "fundamental" rights. <u>See</u> <u>AAK, Inc. v. City of Woonsocket</u>, 830 F. Supp. 99, 105 (D.R.I. 1993); <u>Wendling v. City of Duluth</u>, 495 F. Supp. 1380, 1384-85 (D. Minn. 1980); <u>Bayside Enter., Inc. v. Carson</u>, 450 F. Supp. 696, 704 (M.D. Fla. 1978). In our view, the analogy to <u>Murdock</u> and <u>Cox</u> does not withstand close analysis in light of the Supreme Court's declaration that nude dancing is "only marginally" protected by the First Amendment.

We recognize that an adult entertainment license fee may be so large or so discriminatory as to demonstrate that it is not content neutral. But in other contexts, the prospective licensee has the burden of establishing that a license fee is unreasonable. <u>See</u> <u>LCM Enter., Inc. v. Town of Dartmouth</u>, 14 F.3d 675, 680 (1st Cir. 1994). Jake's offered no evidence on this issue, instead simply arguing that the

City had the burden to prove its fee is revenue neutral.  On this record, we conclude the district court's grant of summary judgment was proper.

**D.**  Finally, Jake's challenges the provisions in Ordinance 36 requiring that live exotic dancing be conducted on a platform raised at least two feet from the floor and located no less than six feet from any patron, and prohibiting the solicitation or offering of gratuities for the dancers.  Several circuits have upheld similar requirements as reasonable, content-neutral time, place, and manner restrictions.  See Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County, 274 F.3d 377, 396-98 (6th Cir. 2001) (three feet); DLS, 107 F.3d at 408-13 (six feet); Colacurcio v. City of Kent, 163 F.3d 545, 553 (9th Cir. 1998), cert. denied, 529 U.S. 1053 (2000) (ten feet); Kev, Inc. v. Kitsap County, 793 F.2d 1053, 1061-62 (9th Cir. 1986) (ten feet and no tipping).

Jake's argues that these restrictions are not needed to combat adverse secondary effects in Coates, pointing to the lack of arrests for sex crimes at its establishment.  Jake's also contends that distance requirements destroy "individual patron-focused dancing, a separate and distinct medium of communication," relying on expert testimony it presented to that effect.  Like our sister circuits, we conclude these restrictions reasonably further the government interest in preventing crime.  As the Ninth Circuit observed in Kev, 793 F.2d at 1061:

> Separating dancers from patrons would reduce the opportunity for prostitution and narcotics transactions. . . . Preventing the exchange of money between dancers and patrons would also appear to reduce the likelihood of drug and sex transactions occurring on regulated premises. . . . While the dancer's erotic message may be slightly less effective from ten feet, the ability to engage in the protected expression is not significantly impaired.  (footnotes omitted)

Jake's further argues these provisions would have a disastrous effect on its ability to operate because the six-foot requirement would eliminate two-thirds of the seating capacity of 120 patrons, eliminate customer access to the women's restroom, and require further capacity reductions to permit access to the men's restroom. Under the City of Renton standard, Ordinance 36 must afford Jake's a "reasonable opportunity to open and operate." 475 U.S. at 54. The inquiry is not concerned with the economic impact of restrictions on a particular business; instead, "we consider the economic effects of the ordinance in the aggregate, not at the individual level." DLS, 107 F.3d at 413. Here, the Coates zoning ordinance is constitutional, so Jake's must relocate. Jake's presented no evidence that it could not design a viable new facility that would satisfy the six-foot requirement. It presented evidence that the no-tipping restriction would reduce profits and adversely affect the income of the dancers, but that evidence fell far short of establishing that Ordinance 36 does not provide a reasonable opportunity to open and operate. Thus, while the short-term financial impact of these restrictions might affect implementation of the zoning ordinance's amortization provision -- an issue we do not consider -- it does not affect the validity of Ordinance 36.

## IV. Conclusion.

The judgment of the district court is affirmed except the portion that declared section 508.10(5) of Coates Ordinance No. 36 constitutional. We modify the judgment to provide that plaintiffs' challenge to section 508.10(5) is dismissed for lack of jurisdiction.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-